MEC:mec
F. #2016R00405

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — —X

UNITED STATES OF AMERICA

- against -

LYDIA HILLS and FAITH ESIMAI,

Defendants.

— — — — — — — — — — — — — —X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN
SUPPORT OF AN
ARREST WARRANT

(18 U.S.C. § 1512(k))

EASTERN DISTRICT OF NEW YORK, SS:

FRANK LOMONACO, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as

such.

On or about and between March 1, 2016, and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants LYDIA HILLS and FAITH ESIMAI, together with others, did knowingly,

intentionally and corruptly conspire to obstruct, influence and impede an official proceeding,

and attempt to do so, to wit: the execution and enforcement of a Judgment of Conviction and an

Order of Forfeiture, entered on July 27, 2010 in United States v. Faith Esimai et al., (Docket No.

09 Cr 00978 (DLC)) in the United States District Court for the Southern District of New York,

in violation of Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Section 1512(k))

The source of your deponent's information and the grounds for his belief are as follows:[1]

## I.  Introduction

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately eleven (11) years and my duties include conducting and assisting in investigations of individuals and criminal groups responsible for public corruption, financial frauds and other white-collar crimes.   I have been involved in the investigation of numerous cases involving the aforementioned types of offenses. These investigations have been conducted both overtly and covertly.   During my years with the FBI, I have (a) conducted physical surveillance; (b) executed search warrants; (c) debriefed cooperating defendants, confidential human sources ("CHS"), cooperating witnesses and victims; (d) reviewed and analyzed taped conversations of those engaged in criminal activities; and (e) monitored wiretapped conversations and text messages.   I have become familiar with the manner in which public corruption schemes and schemes to defraud are carried out and the efforts of persons involved in such schemes to conceal their activities and avoid detection by law enforcement.

2.      I am familiar with the facts and circumstances set forth below based upon: my participation in this investigation; my review of the investigative file, including the defendant FAITH ESIMAI's criminal history record and her prosecution by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") ; consensual recordings made by a Confidential Human Source ("CHS-1"); and from reports and communications by other law

---

[1]      Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

enforcement officers and government officials involved in the investigation.   Where specific

recorded conversations are described, they are set forth only in part and in substance, and are

based on draft transcripts and summaries subject to revision.

## II.   The Confidential Human Source ("CHS-1")[2]

2.     CHS-1 currently operates a business in which he buys, sells and invests in

real estate.   Commencing in March 2016, CHS-1 made consensual recordings of meetings and

telephone calls with the defendants LYDIA HILLS and FAITH ESIMAI, all of which, except

for one, were under the FBI's supervision.   In particular, the defendants and CHS-1 have

discussed the purchase and sale of real estate owned by ESIMAI through a process known as a

"short sale."

## III.   The Defendants

3.     On July 27, 2010, the defendant FAITH ESIMAI was convicted, together

with others, in United States District Court for the Southern District of New York (Docket No.

09 Cr. 0978 (DLC)) of conspiracy to commit wire fraud and bank fraud in violation of 18

U.S.C. § 1349 (the "SDNY CONVICTION").   ESIMAI was sentenced to seventy (70) months

imprisonment, which she has completed.   As part of the SDNY CONVICTION, the district

---

[2]   I have been informed that in 1993, CHS-1 was convicted of wire fraud.   CHS-1 cooperated with the government at that time and was sentenced to two months home detention, five years probation and was required to pay $30,000 in restitution.   In August 2011, pursuant to a cooperation agreement with the government, CHS-1 pled guilty to a $50 million bank fraud in the Eastern District of New York, in violation of 18 U.S.C. § 1344.   CHS-1 directed a large-scale mortgage fraud in which federally-insured loans were misappropriated in a multi-million dollar mortgage company where CHS-1 was the silent owner.   CHS-1 has not yet been sentenced on his August 2011 guilty plea to bank fraud.   He is currently released on bail.   Since 2011, CHS-1 has provided credible information in investigations separate and apart from his bank fraud and his cooperation has led to guilty pleas by several individuals. CHS-1 has been cooperating in hopes of receiving beneficial treatment at his sentencing.

court entered a Judgment ordering ESIMAI to pay $4,952,831.73 in restitution (the

"JUDGMENT") and also entered an Order of Forfeiture in the form of a money judgment

against ESIMAI in the amount of $13,517,486 ("FORFEITURE ORDER"). She is currently

serving a three (3) year term of supervised release.

    4.  Upon information and belief, the defendant LYDIA HILLS is an

attorney admitted to practice law in the State of New York. Upon further information and

belief, HILLS is the niece of the defendant FAITH ESIMAI. During HILLS's recorded

conversations with CHS-1, HILLS told CHS-1 that she is an attorney and that she is ESIMAI's

niece. According to New York State Attorney Registration website, "Lydia Hills" under

"Registration Number 4959524" is currently registered as an attorney in Brooklyn, New York

and has been since 2011. CHS-1 has described for me the law office at 907 Fulton Street,

Brooklyn, New York at which the defendant LYDIA HILLS practices law (the "FULTON

STREET OFFICE"). I have also examined letterhead on correspondence from HILLS to the

USAO-SDNY in which HILLS identifies herself as an "Attorney at Law" with an office at 907

Fulton Streeet, 2nd Floor, Brooklyn, New York, which is the same location that CHS-1 visited

and has described to me. Upon information and belief, HILLS is also licensed as a real estate

broker by the New York Department of State.

IV.    **Short Sale**

5.    Upon information and belief, the Federal National Mortgage

Association ("FNMA" commonly known as "Fannie Mae") is a government-sponsored

enterprise that securitizes mortgages in the form of mortgage-backed securities.   On its

website, Fannie Mae defines a real estate/mortgage "short sale" as a pre-foreclosure sale that

occurs when a home is sold for less than the balance remaining on the homeowner's mortgage.

If the bank or the mortgage company holding the mortgage agrees to a "short sale," a

homeowner can sell his or her home and pay off all or a portion of the mortgage with the

proceeds.

V.    **The Four Subject Properties**

6.    During several March 2016 consensually recorded conversations with

the defendants FAITH ESIMAI and LYDIA HILLS, CHS-1 agreed to purchase four properties

(the "FOUR PROPERTIES") owned by ESIMAI and to arrange for "short sales" with the

entities holding the mortgages on those properties.   According to CHS-1, there are buildings

located on the FOUR PROPERTIES, some of which are in a state of disrepair.   An FBI analyst

has conducted title searches on the FOUR PROPERTIES and determined that the properties are

indeed owned by ESIMAI.   The FOUR PROPERTIES are located at the following addresses:

215-38 112th Avenue, Queens, New York

100-24 197th Street, Queens, New York

205-21 110 Avenue, Queens, New York

72-17 Burchell Avenue, Arverne, Queens, New York

7.     In addition, I have learned that in connection with the JUDGMENT, the USAO-SDNY filed liens against the FOUR PROPERTIES owned by the defendant FAITH ESIMAI.

## VI.     The Conspiracy to Obstruct an Official Proceeding

### (i)     The March 1, 2016 Meeting

8.     On March 1, 2016, CHS-1 met with the defendant LYDIA HILLS at the FULTON STREET OFFICE.  The meeting had been arranged through CHS-1's business associate to discuss the purchase of real estate by CHS-1 through a possible "short sale."  The FBI did not conduct surveillance of the March 1, 2016 meeting between CHS-1 and HILLS.[3] CHS-1, however, on his own initiative, secretly recorded his meeting with HILLS.  HILLS told CHS-1 that the defendant FAITH ESIMAI was her aunt and she was related to ESIMAI through marriage.

9.     The defendant LYDIA HILLS and CHS-1 discussed the purchase by CHS-1 of properties owned by the defendant FAITH ESIMAI.  HILLS told CHS-1 that ESIMAI owned eleven (11) parcels of real property that may be available for CHS-1 to purchase.  In conjunction with his possible purchase of the properties, CHS-1 proposed arranging for "short sales" with the banks and mortgage companies holding the mortgages.  As part of the sale of the properties, HILLS would arrange to have the USAO-SDNY liens released on the properties and in particular the FOUR PROPERTIES.  HILLS added that she was a

---

[3]   A business associate of CHS-1 was also present during this meeting.

"licensed real estate broker" and "prefer[red] to be the broker on this thing," receiving "six percent" as her broker's fee.   (T 3/01/16 at 8-9).[4]

> 10.   The defendant LYDIA HILLS told CHS-1 that the defendant FAITH ESMAI recently completed five (5) years in prison for mortgage fraud.   According to HILLS, ESMIAI wanted to sell some of the properties that she owned, but did not want to use, as required, the proceeds from the sales to pay the restitution in the JUDGMENT against her.[5] The following exchange took place:

| LH: | Five years in federal prison. |
|---|---|
| CHS-1: | Wow. Sorry to hear that. |
| LH: | For real estate fraud. |
| CHS-1: | Okay. |
| LH: | Mortgage fraud. |
| CHS-1: | Okay. |
| LH: | I think what she was doing was helping people to qualify for mortgages by changing numbers [UI]. I don't know I was younger back then. |
| CHS-1: | Yeah. |
| LH: | I didn't know what was going on. |
| CHS-1: | Right. |
| LH: | Um I wasn't really involved and I don't even know anything about it. All I know is that she just came out of jail this past year, 2015. And she's been ordered – |

---

[4] "T" followed by the date refers to the draft transcript for the recording on that date.

[5]   HILLS told CHS-1 that ESMIAI lacked "short term memory" because ESIMAI would call her about the same thing four and five times.   HILLS also stated, however, that ESIMAI was "absolutely" capable of entering into an agreement with CHS-1 for the sale of the properties to him.

CHS-1:        These are houses from - from before she went to jail?

LH:           Yes.

CHS-1:        Ah, I see.

LH:           She owned all these houses. But she had - she was involved in - I think
              she was a mortgage bank or broker or something like that. I don't know.

CHS-1:        Okay.

LH:           But there were a bunch of properties that she was involved in: sales, you
              know purchases, all sorts of stuff.

CHS-1:        Okay.

LH:           Her and five other people they were working together. They were all
              sentenced to prison, federal prison. And as a result, there is this five
              million dollar lien.

CHS-1:        [Chuckles]

LH:           That she and these five individuals have to pay back as restitution.

CHS-1:        Believe it or not it's not uncommon. You see that a lot in Brooklyn, in
              Queens.

LH:           Mhm.

CHS-1:        You see that a lot.

LH:           So the thing is that she cannot personally benefit from any sale.

CHS-1:        Okay. At all?

LH:           Because if it does, it has to go to the government. Restitution.

CHS-1:        Right. I gotcha, I gotcha.

LH:           So if we can do these sales and you know. I know she doesn't want to sell
              all of them; she wants to sell some of them, wants to keep some and [UI]

CHS-1:        Why wouldn't she want to sell all of them? It'd be better just to get rid of
              them, no?

| | |
|---|---|
| LH: | She needs to live. She needs rental income. |
| CHS-1: | Oh she's getting rental income from them? Okay gotcha. |
| LH: | Yeah, some of them. |
| CHS-1: | Okay. |
| LH: | So she needs to be able to survive and take care of herself for the rest of her life. |
| CHS-1: | Right. |
| LH: | And she's doing that through rental income. |
| CHS-1: | I gotcha. |
| LH: | So um… |
| CHS-1: | So she's picked a certain number of them that she wants to sell? |
| LH: | Yes. |
| CHS-1: | Okay. We'd love that. We'd love to buy them all. How many? |
| LH: | I would say at least four. |
| CHS-1: | Uh huh. |
| LH: | I would say at least four. Um I told you about one of them 7217 Burchell Avenue which is in Far Rockaway and Arverne, New York, that's one for sure. |

\*                        \*                        \*

| | |
|---|---|
| CHS-1: | So that's why we're here- |
| LH: | And um… you know if there's anything that can be derived from these properties on the side for her - |
| CHS-1: | Okay. |
| LH: | I'd really appreciate that - |
| CHS-1: | Okay. How do you propose that we [UI] - I don't know the players - |

| | |
|---|---|
| LH: | Yeah… |
| CHS-1: | I don't know. You have to – I don't know. I mean I'm sure it's possible you just have to tell me how - |
| LH: | I don't know how. |
| CHS-1: | [Laughs] |
| LH: | You guys are the professionals. You do this all the time. |
| CHS-1: | [Laughs] Yeah, yeah. No, no I understand, yeah, yeah. |
| LH: | She's an old lady. She can't get anything on the books. |
| CHS-1: | So it's got to be off the books. So it has to be cash you think or…? |
| LH: | Possibly. She can't get anything on the books. I've been working my butt off. I have to get paid so that's why I think its best that I get paid as a broker - |
| CHS-1: | Okay. |
| LH: | Cause that's the [UI]. But I'm not about to; necessarily give her a share of my broker's fee. |
| CHS-1: | Right. |
| LH: | I'm not trying to do that because, I've earned the money that I'm - |
| CHS-1: | I'm with you. I understand. You want to get paid separately. |
| LH: | No, no. I've been managing the properties; you know I've been - |
| CHS-1: | Absolutely. |
| LH: | I've been changing locks on doors and responding to tenants' needs. And all kind of stuff - |
| CHS-1: | And she's collecting the rent to live on? Okay. So you'll be the broker, no problem. |
| LH: | Mhm. |
| CHS-1: | Do you think the only way to do it though is to make sure everybody's protected?   Do you think cash is the only way to really do it? |

| LH: | I don't have any other way though because (UI).   Everything she gets has to be disclosed to the government. |
|---|---|
| CHS-1: | Right. |
| LH: | You know what I mean?   I mean . . . |
| CHS-1: | I just want to know because I have to be able to prepare for myself, to be able to- I need to know the number and I need to know- |

(T 3/01/16 12-16, 18-19).

    (ii)   **The March 8, 2016 Meeting**

        11.    On March 8, 2016, CHS-1 met with the defendants LYDIA HILLS

and FAITH ESIMAI at ESIMAI's residence in Queens, New York where they discussed the

purchase of the FOUR PROPERTIES by CHS-1 from ESIMAI.   CHS-1 consensually

recorded this meeting under the supervision of the FBI.   Preliminarily, HILLS stated that

"[w]e can't talk on the phone."   As set forth below, they then discussed "how we should do it"

so as to structure the real estate transactions and conceal the payments to ESIMAI from the

government.

| LH: | First of all. We cannot make any large deposits into your bank account. You know that. So what I propose is: I'll be giving it to um... [UI] Let's say $25,000 ok?   Let's just say that [UI] Every month I'll be putting in $1,000 so it looks like maybe I'm paying rent or something like that. But you can't... |
|---|---|
| CHS-1: | Is that what-- is that what the number [UI] like $25,000 property? |
| LH: | Possibly. |
| CHS-1: | Yeah? |
| LH: | What is—What do you think about that? |
| CHS-1: | So it can depend on the bank. So if you--you know 'cause you buy a lot of houses obviously so you know I have to negotiate with the bank to get the bank down as cheap as I possibly can. |

| FE: | Yeah, I'm talking to them. They're willing to work. |
|---|---|
| CHS-1: | Yeah? |
| FE: | They're willing to work. |
| CHS-1: | So, the cheaper I get them the more I can give to you, you know? It's just a matter of dollars and cents. It's a matter of – that's all I just want to get—look I just want to make a living.  I don't—I'm not greedy. It could be a fair number, you know what I mean? |
| FE: | Well I'm an old lady [laughing] I'm not buying anymore. |
| CHS-1: | Mhm. Ok. |
| FE: | So I need to put something away. |
| CHS-1: | Ok |
| FE: | Otherwise— |
| CHS-1: | I understand. |
| LH: | That's—that's something we're going to work on doing. |
| FE: | Yeah. |
| LH: | Another option—another option is if she has a bank account in Nigeria--- |
| FE: | In Nigeria. |
| LH: | I can always put the money in that account. |
| FE: | …why don't I put it in my childrens' account. |
| LH: | That's another option too but I'm—I'm very cautious and very afraid. I don't want any… |
| FE: | Them to get into trouble. |
| LH: | Yeah, I don't want any paper trail of large transactions. |
| FE: | Into the accounts. |
| LH: | Right. 'Cause like – they're going to see—we have to talk to the attorney general's office to release the lien. |

| | |
|---|---|
| CHS-1: | Yeah, we're going to have to – one thing is I looked into it because I—we did a few of these before. |
| LH: | Mhm |
| CHS-1: | So what we do is, we go to them and show them first we get the short sale approved with the bank and we show them that there's no equity. Right? Because it's a short sale. Then we give them a letter signed by you, uh saying that uh you're selling the property and asking them to release the lien and you're not getting any money from it. Then they release the lien. Once they release the lien – once they give me the—the lien release, they're still going to hold you responsible though for you know whatever judgment it is. I don't know what the—I don't know—I don't even know the story really but they would still hold you responsible but the lien will be released from the property so that the property will be able to… |
| FE: | That's okay. That's okay. |
| LH: | And that's—and that's what I'm saying. So because we're—you're representing to the government that you're not getting any money you have to be careful that you—that there's no evidence that you're getting money. Do you see what I'm saying? |
| FE: | I have no problem [laughs]. |
| CHS-1: | Okay, so how do you suggest the best way to do this? You tell me, because I don't know your situation. |
| LH: | I think that we can figure that out. |
| CHS-1: | I just know that I can't—I don't want to have any trouble myself. |

                    *              *              *

| | |
|---|---|
| CHS-1: | Well I know, I understand. No, no, no I understand. I understand but we have to have the way like in other words, maybe it's a good idea if it goes—if –if she has a bank account like you say in say Nigeria, nobody can track that, right? I assume? |
| LH: | Mhm. Yeah. So when I go to Nigeria I can just deposit the money there. You know what I'm saying? |
| CHS-1: | I mean, I don't want to have any… |
| LH: | Trail. |

| | |
|---|---|
| CHS-1: | Trai—I mean I want to buy the houses but I also can't have any yeah, I don't want an arrest [laughs]. |
| FE: | [UI] If you're buying cash then it's not a problem. |
| CHS-1: | Well I am buying cash. |
| FE: | Okay, then it's not a problem. |
| CHS-1: | So—yeah but when you're buying cash you know—you don't pay all cash. I mean you want your part in cash. |
| FE: | Mhm. |
| CHS-1: | Ah. |
| LH: | Is that possible? |
| CHS-1: | [Sighs] I mean… |
| FE: | Because they don't—they won't know you gave me that cash, they'll—they'll—they'll [UI] |
| LH: | That's true. |
| CHS-1: | If that's what it takes, then— |
| FE: | Yeah because this… |
| LH: | But—but—you Auntie you have to be very careful with that… |
| FE: | I— |
| CHS-1: | What're you going to do with it? It's a lot of money. |
| FE: | [UI] Because, see my [UI] |
| LH: | You know what I'm going to do is I'm going to buy you a safe. I'm going to buy you a safe. |
| FE: | Mhm. |
| LH: | So any money that you have [UI]- |
| FE: | Because what I told her, I didn't believe in leaving money in the bank. |
| CHS-1: | Uh huh. |

| | |
|---|---|
| FE: | So every dime I had I put it in buying these houses |

[Phone rings]

| | |
|---|---|
| CHS-1: | Uh huh. So all the money is in your houses. |
| FE: | In the houses. See if I lose them... |
| LH: | She put a lot—she put a lot—she put a lot of money into these houses. |
| CHS-1: | I see, I see. |
| LH: | Her own money. |
| CHS-1: | I see. |
| LH: | That's the problem. And that's what is that connection (UI) it's easier to get rid of them. |
| CHS-1: | I understand. |
| LH: | It's not so easy to just get rid of them because she actually put money into it. |

*        *        *

| | |
|---|---|
| CHS-1: | Yeah, okay so once I buy these houses the thing is this: I don't mind—I'll go along with everything but I want to make sure you're able to sign because I—I want—I need to own the proper—I want to make sure once I pay all the money that I own the properties. |
| FE: | Of course I will sign. |
| CHS-1: | Okay. |
| LH: | Yes, she will sign absolutely. |
| CHS-1: | Okay. |
| LH: | Whenever there's a signing, I'll be there. Her daughter Dee will be there as well, even though you don't Dee there, but Dee is the power of attorney. She's her blood daughter. She will be present for any signings. |
| CHS-1: | Okay. |
| LH: | Okay? |

CHS-1:        Okay.

LH:           Myself and Dee will be present for all signings.

CHS-1:        Okay, I just wanna make sure that you can—tran—transfer the properties.
              That's all.

LH:           She can, she can.

CHS-1:        Okay.

LH:           She can.

(T 3/01/16, 7-9, 12-14,16).

        12.     CHS-1 and the defendants FAITH ESIMAI and LYDIA HILLS

continued their March 8th meeting by discussing the negotiation of the "short sales" with the

banks and the payment of $25,000 in cash per parcel, totaling $100,000, to ESIMAI, along with

a 6% brokerage fee for HILLS.

CHS-1:        Okay, so let's finish on the other houses. So—so—so okay. So I just wanted
              to make sure first before—I'll get all the paperwork together. I just wanted to
              have an agreement to know—I wanted to know how much the money is
              going to be and how I'm gonna give you the money.

FE:           Are you a millionaire?

CHS-1:        Uh—I want to be though.

[Laughing]

CHS-1:        I'm hoping to be soon. I'm working on it, I'm working on it, I'm working on
              it, I'm working on it. Yeah, I—I have enough that I can—uh—I have enough
              to be ok.

FE:           I was working on that, but now I give up.

CHS-1:        You give up on it?

[Laughing]

CHS-1:        You're not a millionaire anymore?

FE:           Uh uh.

| | |
|---|---|
| CHS-1: | No? |
| FE: | I can [UI] |
| CHS-1: | Well you have a lot of houses though. I saw that you have a lot of houses, that's good. So—so let's—and—so—ok, so on these houses, on this—on this one on 197th I'm going to—again, I'm going to have to negotiate with the bank. How much money do—do—we can talk free here? |
| LH: | Yeah. |
| CHS-1: | Okay. |
| FE: | 197th is which one? |
| LH: | That's around the corner. |
| FE: | Oh the brick house? |
| CHS-1: | How much money do you want in—in cash from me? |
| FE: | $25,000 |
| CHS-1: | 25? |
| FE: | Yeah. |
| CHS-1: | You said 25?   Okay so 25 for this one, and on Burchell?   Because I have to put in the numbers and then negotiate with the bank so I know. How much on Burchell? |
| FE: | Burchell is a one or two family house? |
| CHS-1: | It's a two family. |
| FE: | But this is [UI] area. |
| CHS-1: | Yeah. |
| FE: | So you give me a little more on that. |
| CHS-1: | Okay,  I don't mind giving you a little more on this one because you're right, it's an up and coming area but I have to see what I'm gonna be able to get it-- |
| FE: | Mhm. |

| | |
|---|---|
| CHS-1: | --for from the bank. Do you have any idea—like what's your bottom line on it? |
| FE: | The Burchell one? |
| CHS-1: | Yeah. |
| LH: | What's the minimum that you would take? |
| FE: | (UI) |
| CHS-1: | Yeah. |
| FE: | You can't get me 25? |
| CHS-1: | But I want it. |
| FE: | You can't get me 25 too? |
| CHS-1: | 25 uh both of them? |
| FE: | Uh huh. |
| CHS-1: | On each one? So 50 all together? |
| FE: | Uh huh |
| CHS-1: | Okay, just remember, just remember it has to be ca—if—if it's gonna be in cash— |
| FE: | Mhm? |
| CHS-1: | It costs me money for taxes because I have to pay you cash I can't report it. It's not—I'm not saying that it's too much, I'm saying it's ok but just remember, you know, that's probably going to be the maximum that I'm gonna be able to do, is that amount. I'm not going to be able to do more than that. |
| FE: | You just said buy those two. |
| LH: | For those two. |
| CHS-1: | For those two. Yeah, each one. |
| LH: | Mhm. |
| CHS-1: | Right so it'd be 50 altogether. |

| | |
|---|---|
| FE: | Mhm. |
| LH: | What about for the third one, the shell? |
| FE: | Yes, what about that? |
| CHS-1: | I mean, I—I'm okay-- |
| [Laughing] | |
| CHS-1: | What's that? What'd she say? |
| LH: | You've run out of money. |
| CHS-1: | No, I'm not. I didn't run out of money, this is what I do for a living. No, believe me—it'll be 10 or 12 in the month so… |
| LH: | What about—what about this one? Belonging to my other aunt in Long Island? |
| CHS-1: | I haven't gotten the chance because with Hempstead, I'm not really like— |
| LH: | You know my aunt, right? Auntie Montfilomena Esugie [PH]? That's um Ephanie's [PH] wife's parents. |
| FE: | Sure, oh yeah? |
| LH: | Professor Esugie [PH]? |
| FE: | Of course I know them. |
| LH: | I—I'm working on their house too. He's going to buy it too. |
| FE: | But they're not here? |
| LH: | They're here. They—they're visiting. |
| FE: | Oh, okay. |
| LH: | But they're—they're based in Nigeria. They're visiting but their house in foreclosure in Long Island. |
| FE: | Oh |
| LH: | So he's going to buy it too. |
| CHS-1: | Okay. |

| | |
|---|---|
| FE: | Okay. |
| CHS-1: | Yeah, it's fine, no problem. These are easy. We do about 10 or 12 of these in a month. So this is great for me to be able to do this in one shot. I'm happy—I'm happy to do it. So on this one on 110th you want to do the same thing? 25 on this one also? |

CHS-1:     Yeah, it's fine, no problem. These are easy. We do about 10 or 12 of these in a month. So this is great for me to be able to do this in one shot. I'm happy—I'm happy to do it. So on this one on 110th you want to do the same thing? 25 on this one also?

FE:     I thought we settled that already.

LH:     No, this is a third one.

CHS-1:     This is the third one.

FE:     The third one? That's the one you said—I love that house.

LH:     No, we—

CHS-1:     It's wrecked.

LH:     We'll make the decision aft--

CHS-1:     There a roof off it.

LH:     We'll make a decision after you visit. How about that? I don't want to force you into anything. So let's—let me take you there. I want you to see it for yourself.

FE:     Okay.

CHS-1:     So as long as we know the numbers I'm good. And then as long as we—you can—I need to give that affidavit to the attorney general. You realize we have to give that affidavit to the attorney general?

LH:     Mhm, mhm.

FE:     So there's no rush. What if—if he picked out four he wants—as long as I have hundred money coming from here, installments--

LH:     Yeah, yeah you'll have your—you'll have your properties that you're keeping and then you'll have the cash that you receive on the side.

FE:     Mhm. So if he can set us up 100 for me.

LH:     For the four.

CHS-1:     100,000 for four?

| | |
|---|---|
| FE: | For four. |
| CHS-1: | Ok, fine. |
| LH: | So it's basically 25 each. |
| CHS-1: | Fine. That's fine. Alright, fine. That's good for me because I can get four in one shot. |
| FE: | Because it's really the going rate is no good. And what are his plans? |
| LH: | Well we have to talk. We have to talk because I'm—I'm very much concerned for you. Please don't talk about this on the phone to anybody. |
| CHS-1: | Yeah, no listen. Don't talk on the phone to anybody because I can't—I can't have a problem. |
| FE: | I don't. |
| LH: | Only talk when they're—when he comes here then talk to her face to face. |
| FE: | [UI] talking to her about money on the phone. |
| LH: | I'm just saying, please. |
| FE: | I won't. Of course I won't. [UI] |
| CI: | Okay. |
| FE: | (UI) |
| LH: | No, no. I'm just saying 'cause sometimes we forget, and we're just think that everything is —but no |
| FE: | No, no, no. We don't discuss money at all on the phone, okay? |
| CHS-1: | Okay, will you be there— |
| FE: | We don't even discuss these houses. 'Cause my children are not interested in houses. |
| LH: | Mhm. |
| CHS-1: | Okay. |
| FE: | Okay? [UI] Think it over uh but they didn't, anyone's not complaining [UI] |

| CHS-1: | Okay. |
|---|---|
| FE: | Yeah. |
| CHS-1: | Okay. So fine, I'll hold up my end of the bargain but it'll be one house at a time so as we—you know if we could close them all at the same time, I will. |
| LH: | Perfect. |
| CI: | Okay? And I'll just come with the whole—you know— |
| LH: | Mhm |
| CHS-1: | Suitcase full of cash. |
| [Laughing] | |
| CHS-1: | If—if not, it'll be each one, one by one. |
| FE: | Make it—make it one by one. |
| CHS-1: | Okay. |
| FE: | So we have confirmation that there are no counterfeits. |
| LH: | When—when Dee comes— |
| FE: | Mhm. |
| LH: | I would like you to sit down and talk with her too. You guys can figure out how you're going to handle that money, whether it's putting it in a safe— |
| FE: | Why do we have you? |
| LH: | I know but—I'm—that's your daughter, you know? Like I—I want to make sure that she's on the same page with you as well. |
| FE: | My children are not-- |
| LH: | She comes to your house all the time. Like— |
| FE: | She doesn't. |
| LH: | She's your protector. |
| FE: | My children are not business minded. |

| | |
|---|---|
| LH: | I know but still...still I think it's important, I think it's important. |
| FE: | They are not business minded so we [UI] |
| LH: | I'm going to tell you the reason why I'm saying that. |
| FE: | Mhm. |
| LH: | Do you want me to tell you why I'm saying that? |
| FE: | Okay |

*       *       *

| | |
|---|---|
| CHS-1: | Yeah, no I know. I know, but you know a lot of people—a lot of investors are out there but at the end of the day, you know, we have to be able to be—we—we have to be careful cuz I don't—I—I can't afford to have any problems and I—I— |
| LH: | Neither can I. |
| CHS-1: | Right. |
| LH: | I'd lose my license to practice law. |
| CHS-1: | Right so, this has to be like—here. Nobody else. Ok. |
| FE: | [UI] Anymore. |
| CHS-1: | Okay. Okay. Alright. I'm gonna get—I'm gonna look into the AG's office. |
| LH: | Okay. |
| CHS-1: | To find out what they need. |
| LH: | Mhm. |
| CHS-1: | And I'll work with you to get the affidavit. |
| LH: | Okay. |
| CHS-1: | That we'll have to get from them to release and then I'll work with the banks on these four properties. |
| FE: | But what—why would we tell them we want to release? |

| | |
|---|---|
| CHS-1: | Uh—we could tell—well what you're going to tell them actually is you're gonna have to tell them. |
| LH: | Yeah, you—you want me to—so you want me to— |
| FE: | But are we talking to them and the banks or |
| LH: | No, not the bank. The attorney general's office. |
| FE: | Oh. |
| LH: | The people who put the lien on the house. |
| FE: | Ah. 'Cause I thought that [UI] the banks are very [UI] |
| LH: | Yeah, yeah |
| CHS-1: | Yeah. |
| LH: | It's the government 'cause the government who's pu—putting the lien on the house, meaning even if you sell it to him, that lien will still be there. |
| CHS-1: | I'll hold—I'll hold—right then I'll be stuck with it. |
| LH: | Right. So what we're doing is calling them and saying can you please release this lien because she's not gonna get any money. Allow him to buy it because she's not getting any money. So we have to put that in writing, sign it, and send it to them. That's what he's saying. |
| FE: | Oh. |
| CHS-1: | You understand? Otherwise, I won't be able to buy the house. |
| LH: | It's sort of like a tax lien. A tax lien won't go away unless it's paid or unless it's forgiven. And in this situation, we're asking them to forgive that lien because you're not receiving money. |

*            *            *

| | |
|---|---|
| CHS-1: | And I'll get the contracts to you ASAP like literally tomorrow. You're gonna have them in your email. |
| LH: | Okay, no problem. No problem. |
| CHS-1: | Okay? And then the affidavit—we'll discuss what has to be done to the affidavit to send to the AG and negotiate, I'll find out. |

LH:              Mhm.

CHS-1:           I guess you'll—you'll prepare and have her sign it.

LH:              Yes.

CHS-1:           We—we'd start to negotiate with them and we're finished.

LH:              Not a problem.

FE:              But that's—make sure no check.

LH:              No check to you.

FE:              To me.

CHS-1:           Right—that's—I understand, no check. No believe me, no check. I
                 can't—I'm not giving you a check.

[Laughing]

CHS-1:           I'm not giving you a check. I like you, but I'm not giving you a check.

[Laughing]

CHS-1:           I wish I could give you a check. If you would let me, I'd give you a check but
                 I can't.

LH:              Right so—so--so

FE:              So who will—who will count the money and make sure it's not counterfeit?

LH:              I'm going to be here.

CHS-1:           I'll give it to you and I'll wait you count it and do whatever you want.

LH:              I have a counterfeit pen. I have a counterfeit pen.

[Laughing]

CHS-1:           Okay

LH:              No, no I do. Just—you know, just um Friday I met with a client—one of
                 my—my—art—my music clients and they brought $45,000 so I had to buy
                 this. It's a money marker.

FE:              So if it's counterfeit it whitens?

| | |
|---|---|
| LH: | It—it gets brown. Dark brown if it's counterfeit. This is a counterfeit pen. |
| CHS-1: | Wow. |
| FE: | Oh yeah? That's interesting. |
| LH: | Yeah. I just bought it. So you don't to worry about that. |
| CHS-1: | Good, I'll sit here while you count it. Don't worry. I'll sit here while you count it and it'll be fine. |
| LH: | So what I was gonna—I was gonna say something I'm just forgetting it. So I'm the broker on the deal. So I'm gonna be paid a brokers fee. So the money that you're— |
| CHS-1: | It's not coming out of---it's not coming out of your money. |
| LH: | It's not coming out of your money. So you don't have to pay me a dime. My brokers fee, just so you know, will coming from the sale price. |
| CHS-1: | From the sale price. |
| LH: | So you don't have to give me one cent. |
| CHS-1: | The bank winds up paying it. When we negotiate with the bank, they pay it. Okay? |
| FE: | Okay. So then— |
| CHS-1: | So we have an agreement? |
| LH: | [UI] |
| CHS-1: | Four houses, 100,000. |
| FE: | You rather take the money as a broker than as a lawyer? |
| LH: | Than as a lawyer. Exactly. That's why I'm calling my friend to do the closing. If I, look, if I do the closing as a lawyer I'm gonna get $1,500. |
| FE: | More than a broker? |
| CHS-1: | No. |
| LH: | No the broker makes more. |
| CHS-1: | Yeah, the broker's gonna be, you know... |

| FE: | Oh $1,500 [UI] |
| CHS-1: | Yeah, yeah, yeah. A broker's gonna be 12 15,000 a shot. |
| LH: | It's like 6% of the sale price. |
| FE: | [UI] bought all these houses. |
| CHS-1: | Mhm. |
| FE: | But now... |
| LH: | Mhm. |
| CHS-1: | I understand. |
| LH: | So that's the thing. So that's why I want—I don't wanna be the lawyer on the deal cuz you know I've been working hard from the beginning. |
| FE: | I hear you. |
| LH: | With no pay. |
| FE: | I hear you. |
| LH: | So this will be my pay. |
| FE: | Ok, that's great. |

(T 3/08/16, 25-32, 37-39, 42-45).

## VII    The Four Contracts of Sale for the Properties To Be Sold by Esimai to CHS-1

13.    On or about March 9, 2016, CHS-1 drafted the contracts of sale for

the FOUR PROPERTIES and sent the contracts to the defendant LYDIA HILLS via e-mail.

Each contract set forth sale of a property by the defendant FAITH ESIMAI to the CHS-1's

company at the following purchase prices:

| PROPERTY | SALES PRICE |
|---|---|
| 215-38 112th Avenue, Queens, New York | $135,000 |
| 100-24 197th Street, Queens, New York | $140,000 |
| 205-21 110th Avenue, Queens, New York | $151,000 |
| 72-17 Burchell Avenue, Arverne, New York | $60,000[6] |
| Total | $486,000 |

Upon information and belief, the defendant FAITH ESIMAI signed these contracts.   Each contract contained the following provision:

The parties acknowledge the aggregate amount of the existing liens exceed the purchase price. The buyer may elect to purchase the property subject to all existing liens, which it reserves the right to negotiate at a later date, except a restitution lien entered by the United States Government.   The seller agrees to obtain a lien release for the restitution lien.

## VIII.   The Communications Between LYDIA HILLS and the USAO-SDNY Regarding the Lien

14.   On or about March 14, 2016, a caller representing herself to be Lydia Hills, "an attorney and a broker" at telephone number (646) 247-588, left a voice message with the USAO-SDNY, requesting that someone return her call because she had some questions about the release of a lien on a property.

12.   On or about March 15, 2016, the USAO-SDNY received via fax a signed letter on the stationary of "Lydia C. Hills 907 Fulton Street, 2nd Floor, Brooklyn, N.Y. 11238" stating in pertinent part:

---

[6]   After further discussions between the defendant LYDIA HILLS and CHS-1, the purchase price in the contract for Burchell Avenue was later increased to $135,000.

Re:     7217 Burchell Avenue, Arverne, New York 11692

To Whom It May Concern:

This office represents Faith Divine Esimai as the broker for the sale of her property referenced above.   The property is currently in foreclosure and an auction date has been scheduled for April 8, 2016.   Due to the amounts required to be paid by Ms. Esimai for restitution, their (sic) is a hefty lien on this property.

Ms. Esimai is receiving no benefit, financial or otherwise, from the short sale of this property.   A contract has been made between Ms. Esimai and a potential buyer.   As such we are seeking to have the lien lifted in order to consummate the transaction.   On behalf of Ms. Esimai, I am requesting any information or instructions on how this lien may be released from the property. Ms. Esimai will provide an affidavit attesting to the fact that she will not receive any financial benefit from this short sale.   Any additional documentation or information shall be provided upon request.

Your prompt attention to this matter is very much appreciated.   Please feel free to contact me directly at 646-247-0588 to discuss this matter.[7]

13.     On or about March 15, 2016 the bank holding the mortgage on one of the

FOUR PROPERTIES, namely 100-24 197th Street, Queens, New York, foreclosed on this

property thereby precluding CHS-1 from negotiating a "short sale" on behalf of the defendant

FAITH ESIMAI for her property.

14.     Upon information and belief, on March 15, 2016, the USAO-SDNY sent

a fax to the defendant LYDIA HILLS acknowledging her request that the government release

its lien on 72-17 Burchell Avenue, Arverne, Queens, New York.   The USAO-SDNY informed

HILLS that in order to release its lien the government required that the defendant FAITH

ESIMAI complete an accompanying financial disclosure form and also provide: (1) the contract

of sale; (2) a statement from the bank/mortgage holder indicating the monthly payments, the

---

[7]   This letter is attached hereto and incorporated herein by this reference as though fully set forth.

amount in arrears and the outstanding balance; (3) the judgment of foreclosure and sale; (4) an

affidavit outlining the proposed distribution of the sale proceeds; (5) an appraisal of the

property; and   (6) a list of all lienholders.

**IX**     **The Anticipated Closing For 72-17 Burchell Avenue**

15.     Upon information and belief, Fannie Mae holds the mortgage on 72-17

Burchell Avenue, Arverne, Queens, and Setarus is the servicer.   The foreclosure on this

property is scheduled for April 8, 2016.   CHS-1 and the defendants LYDIA HILL and FAITH

ESIMAI have scheduled the closing for 72-17 Burchell Avenue, Arverne, Queens, New York

for April 6, 2016 at a location in the Eastern District of New York. At that time it is anticipated

that ESIMAI, accompanied by HILLS, will convey the deed for this property to CHS-1.   At

that same time, using government-authorized undercover funds, CHS-1 will give $25,000 in

cash to ESIMAI and a broker's fee of $8,100 to HILLS.

WHEREFORE, your deponent respectfully requests that the defendant LYDIA

HILLS and FAITH ESIMAI, be dealt with according to law.

FRANK LOMONACO
Special Agent, Federal Bureau of Investigation

Sworn to before me this
/ ˢᵀ day of March, 2016
          April

THE HONORA
UNITED STAT      S /Pollak
EASTERN DIST.

THE LAW OFFICES OF

# Lydia C. Hills

ATTORNEY AT LAW

907 FULTON STREET, 2ND FLOOR * BROOKLYN, NY 11238

PHONE (347) 674-8338 * FAX (347) 694-8338

<u>Sent via Facsimile to 212-637-2717</u>

March 15, 2016

United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York City, NY 10007

Re:    7217 Burchell Avenue, Arverne, New York 11692

To Whom It May Concern:

This office represents Faith Divine Esimai as the broker for the sale of her property referenced above. The property is currently in foreclosure and an auction date has been scheduled for April 8, 2016. Due to amounts required to be paid by Ms. Esimai for restitution, their is a hefty lien on this property.

Ms. Esimai is receiving no benefit, financial or otherwise, from the short sale of this property. A contract has been made between Ms. Esimai and a potential buyer. As such, we are seeking to have the lien lifted in order to consummate the transaction. On behalf of Ms. Esimai, I am requesting any information or instructions on how this lien may be released from the property. Ms. Esimai will provide an affidavit attesting to the fact that she will not receive any financial benefit from this short sale. Any additional documentation or information shall be provided upon request.

Your prompt attention to this matter is very much appreciated. Please feel free to contact me directly at 646-247-0588 to discuss this matter.

Kind regards,

Lydia C. Hills, Esq.